IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOSE B. DE LA CERDA,                    §
TDCJ #390550,                           §
                                        §
            Petitioner,                 §
                                        §
v.                                      §          CIVIL ACTION NO. H-05-1270
                                        §
DOUG DRETKE, Director,                  §
Texas Department of Criminal Justice -  §
Correctional Institutions Division,     §
                                        §
            Respondent.                 §

## MEMORANDUM AND ORDER

State inmate Jose B. De La Cerda has filed a petition for a writ of habeas corpus under

28 U.S.C. § 2254, challenging the conditions of his release on parole.  The respondent has

filed a motion for summary judgment, arguing that De La Cerda is not entitled to federal

habeas corpus relief.  (Docket Entry No. 7).  De La Cerda has filed a reply and a motion for

an evidentiary hearing.  (Docket Entry Nos. 9, 11).  After considering all of the pleadings,

the state court records, and the applicable law, the Court grants the respondent's motion,

denies habeas corpus relief, and dismisses this case for reasons set forth below.

## I.      BACKGROUND

A grand jury in Montgomery County, Texas, returned an indictment against De La

Cerda, charging him with two counts of aggravated kidnapping in cause number 17,804.  The

State enhanced that indictment for purposes of punishment with allegations that De La Cerda

had at least three prior felony convictions.  On January 7, 1985, a jury in the 221st District

Court of Montgomery County, Texas, found De La Cerda guilty as charged of aggravated kidnapping and further found that a deadly weapon, namely, a firearm, was used to commit the offense. During the punishment phase of the trial, De La Cerda conceded that he was a habitual offender and that the prior felony convictions listed in the indictment to enhance his punishment were "true." On January 10, 1985, the trial court sentenced De La Cerda to serve forty years of imprisonment on each count.

De La Cerda has filed a federal habeas corpus petition under 28 U.S.C. § 2254. He does not challenge any of his underlying convictions. Instead, De La Cerda seeks relief from conditions that were imposed upon his release from custody onto the form of parole known as mandatory supervision.[1] Specifically, De La Cerda complains that he was released from prison on July 30, 2003, subject to certain special conditions as part of the "super intensive supervision program" or SISP. The SISP conditions that De La Cerda complains about include his temporary placement in a community confinement center and the requirement that he participate in electronic monitoring. De La Cerda objects that he was made to comply with SISP conditions in violation of the Ex Post Facto Clause because these conditions did not exist at the time of his offense and conviction.

De La Cerda's parole was revoked following a hearing on June 24, 2004. Although De La Cerda was accused of failing to comply with the technical conditions of his supervised

---

[1]     In Texas, mandatory supervision is "the release of an eligible inmate so that the inmate may serve the remainder of the inmate's sentence not on parole but under the supervision of the pardons and paroles division." TEX. GOV'T CODE § 508.001(5).

release, this was not the reason for his revocation.  Evidence introduced at that hearing showed that De La Cerda had been convicted of a new felony offense pursuant to his guilty plea in cause number 987708, which lodged charges of possession with intent to deliver a controlled substance, namely, cocaine.  As a result, De La Cerda received a fifteen-year prison sentence.  The Board of Pardons and Paroles revoked De La Cerda's mandatory supervision certificate and he returned to TDCJ custody on July 9, 2004.

De La Cerda does not challenge his parole revocation here.  His petition concerns only the technical conditions of supervised release that were imposed in July of 2003.  The respondent has answered the pending petition with a motion for summary judgment, arguing that De La Cerda is not entitled to federal habeas corpus relief.  De La Cerda disagrees.  The parties' contentions are discussed below under the governing standards of review.

## II.     STANDARDS OF REVIEW

### A.     Summary Judgment

The respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  A movant's burden is to point out the absence of evidence supporting the nonmovant's case.  *Malacara v. Garber*,

353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).   To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action.   *Id.* (citing *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 349 (5th Cir. 2001)).

An issue is material if its resolution could affect the outcome of the action. *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).   In deciding whether a fact issue has been created, the facts and the inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party.   *Hotard v. State Farm Fire & Cas. Co.,* 286 F.3d 814, 817 (5th Cir. 2002).   However, factual controversies are resolved in favor of the nonmovant "only when there is an actual controversy – that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir. 1999).

The petitioner proceeds *pro se* in this case.   Courts construe pleadings filed by *pro se* litigants under a less stringent standard than those drafted by attorneys.   *See Haines v. Kerner*, 404 U.S. 519 (1972); *see also Bledsue v. Johnson*, 188 F.3d 250, 255 (5th Cir. 1999) ("[I]n this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.").   Pleadings filed by a *pro se* litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them.   *See Haines*, 404 U.S. at 521; *see also United States v. Pena*,

122 F.3d 3, 4 (5th Cir. 1997) (citing *Nerren v. Livingston Police Dept.*, 84 F.3d 469, 473 & n.16 (5th Cir. 1996)).  Nevertheless, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion.  *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

     **B.**     **Habeas Corpus Review**

     The federal writ of habeas corpus is an extraordinary remedy, which shall not extend to any prisoner unless he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. §§ 2241(c)(3), 2254(a); *Brecht v. Abrahamson*, 507 U.S. 619, 633-34 (1993) (explaining that "the writ of habeas corpus has historically been regarded as an extraordinary remedy, a bulwark against convictions that violate fundamental fairness").  The pending federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that the AEDPA applies to those habeas corpus petitions filed after its effective date of April 24, 1996).  Embodying the principles of federalism, comity, and finality of judgments, the AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000), *cert. denied*, 532 U.S. 1067 (2001).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v.*

*Cone*, 535 U.S. 685, 693 (2002).

De La Cerda's complaint about the conditions of his release was raised on state habeas corpus review before the Texas Court of Criminal Appeals, which rejected his claims based on findings and conclusions made by the trial court. *See Ex parte De La Cerda*, No. 15,367-06 (Tex. Crim. App. Dec. 1, 2004).   As a matter of law, a denial of relief by the Court of Criminal Appeals serves as an adjudication on the merits of the claim. *See Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir.) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)), *cert. denied*, 531 U.S. 849 (2000); *see also Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999) (noting that, under Texas law, a denial of relief rather than a dismissal of the claim by the Court of Criminal Appeals disposes of the merits of a claim). Accordingly, the federal habeas corpus standard of review, as amended by the AEDPA, applies to the petitioner's claims as long as they were adjudicated on the merits and not dismissed for procedural reasons.[2]  *See Haley v. Cockrell*, 306 F.3d 257, 263 (5th Cir. 2002) (citing *Valdez v. Cockrell*, 274 F.3d 941, 946-48 (5th Cir. 2001)); *see also Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) (concluding that when a state habeas corpus court rejects a petitioner's claim on procedural grounds, there has not been an "adjudication on the

---

[2]      Additionally, pre-AEDPA precedent forecloses habeas corpus relief if any of the following circumstances are present: (1) the claim is barred as a consequence of the petitioner's failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722 (1991); (2) the claim seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288 (1989); or (3) the claim asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

merits" as contemplated by the AEDPA).

The provisions of 28 U.S.C. § 2254(d), as amended by the AEDPA, set forth a "highly deferential standard for evaluating state-court rulings, . . . , which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (internal citation omitted). For claims adjudicated on the merits, the AEDPA's amendments provide that a petitioner is not entitled to relief unless the state court's adjudication:

1.  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Courts are to review pure questions of law and mixed questions of law and fact under § 2254(d)(1). *See Martin v. Cain*, 246 F.3d 471, 475 (5th Cir.), *cert. denied*, 534 U.S. 885 (2001). Under the first ("contrary to") clause, a federal district court may grant habeas relief if the state court decided a case differently from how the United States Supreme Court decided a case on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). Under the second ("unreasonable application") clause, a court may grant habeas relief if the state court correctly divined a legal principle from the Supreme Court's jurisprudence but misapplied that principle to the facts. *See id*.

Section 2254(d)(2) governs pure questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501, 504 (5th Cir. 2000). Under this subsection, federal courts must give deference to state court findings of fact unless they are based on an unreasonable interpretation of the

evidence presented in the state court proceeding.  *See Brewer v. Dretke*, 410 F.3d 773, 775

(5th Cir. 2005) (citing *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000) (as modified

on denial of rehearing)).  In addition, any factual findings made by the state court in deciding

a petitioner's claims are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner

rebuts those findings with "clear and convincing evidence to the contrary."  *Smith v.

Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002).

      This Court's inquiry under the AEDPA is not altered where the state court denies

relief without a written opinion.  *See Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir.

2003).  For such a situation, a reviewing court (1) assumes that the state court applied the

proper "clearly established Federal law"; and (2) then determines whether its decision was

"contrary to" or was "an objectively unreasonable application of" that law.  *Id.* (citing

*Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).  A federal habeas corpus

court's review is therefore restricted to the reasonableness of the state court's "ultimate

decision, not every jot of its reasoning."  *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.

2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001) (noting that even where a state

court makes a mistake in its analysis, "we are determining the reasonableness of the state

court's 'decision,' . . . not grading their papers.")), *cert. denied*, 535 U.S. 982 (2002).

## III.   <u>DISCUSSION</u>

### A.   **Habeas Corpus or Civil Rights**

      The main thrust of De La Cerda's petition challenges the conditions of supervised

release imposed by the parole board.  Specifically, De La Cerda challenges the imposition

of electronic monitoring and the requirement that he reside temporarily at a community confinement center upon his release from prison.  The respondent argues at the outset that the petition should be dismissed because a federal writ of habeas corpus is not available to remedy "conditions" of parole such as those challenged by De La Cerda.  The respondent argues that De La Cerda's challenge is properly made, if at all, in a civil rights complaint governed by 42 U.S.C. § 1983.  The Court is unpersuaded by the respondent's argument.

It is well settled that an action under 42 U.S.C. § 1983 is the appropriate legal vehicle to attack unconstitutional conditions of confinement.  *See Cook v. Texas Dep't of Criminal Justice Transitional Planning Dep't*, 37 F.3d 166, 168 (5th Cir. 1994).  By contrast, the writ of habeas corpus is the appropriate federal remedy for a state prisoner challenging the "fact of confinement."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  The "core issue in determining whether a prisoner must pursue habeas corpus relief rather than a civil rights action is to determine whether the prisoner challenges the 'fact or duration' of his confinement or merely challenges the rules, customs, and procedures affecting 'conditions' of confinement."  *Cook*, 37 F.3d at 168 (quoting *Spina v. Aaron*, 821 F.2d 1126, 1128 (5th Cir. 1987)).

The constraints challenged by De La Cerda do not concern his incarceration.  As outlined above, the law is fairly clear with respect to the distinction between habeas corpus and civil rights where the prisoner is in physical custody.  The law is less clear, however, where the petitioner does not take issue with his physical custody, but instead challenges constraints under which he is "confined" by restrictive conditions of parole.  The Fifth

Circuit has not addressed this precise question directly.[3]  However, another circuit has held that habeas corpus review is appropriate where an individual challenges a restrictive condition of parole:

> For prisoners, the difference between a civil rights action and a collateral attack is easy to describe.  Challenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983.  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973).  Attacks on the fact or duration of the confinement come under § 2254.  *Id*.; *Moran v. Sondalle*, 218 F.3d 647, 650-51 (7th Cir. 2000) (per curiam).  For parolees, the question is more metaphysical, because the "conditions" of parole are the confinement.  Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or (as in [the petitioner's] case) obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom.  It is because of these restrictions that parolees remain "in custody" on their unexpired sentences and thus may initiate a collateral attack while on parole.  *See Jones v. Cunningham*, 371 U.S. 236, 242-43 (1963); *see also Maleng v. Cook*, 490 U.S. 488, 491 (1989) (per curiam).

*Williams v. Wisconsin*, 336 F.3d 576, 579 (7th Cir. 2003) (dismissing a civil rights case for failure to state a claim where a parolee challenged conditions of release that restricted his ability to travel); *see also Drollinger v. Milligan*, 552 F.2d 1220 (7th Cir. 1977) (observing

---

[3]     The Fifth Circuit has distinguished between cases in which a prisoner challenges the result of a single defective parole hearing, and a challenge to a procedure employed by the parole board in deciding a prisoner's eligibility for release on parole.  *See Cook*, 37 F.3d at 168.  The former is cognizable on habeas corpus review.  *See id.*  The latter is cognizable under § 1983.  *See id.*  The Fifth Circuit has also clarified that a prisoner may seek habeas corpus review for conditions of parole where his failure to comply with those conditions has resulted in the revocation of his supervised release.  *See Coleman v. Dretke*, 409 F.3d 665 (5th Cir. 2004).  The circumstances at issue in *Coleman* are not present here, as De La Cerda has returned to prison as the result of a new conviction, and not for technical violations of the conditions of his release.  The respondent otherwise cites no authority, and this Court has not uncovered any, showing that a civil rights action under 42 U.S.C. § 1983 is the exclusive avenue for challenging a restrictive condition placed on parole once the person is out of physical custody.

that the lifting of a parole condition frees the petition from confinement, "figuratively speaking," by removing the restrictive condition).

De La Cerda does not challenge the conditions of his confinement as that type of challenge is traditionally employed, meaning that he does not complain about lack of adequate medical care or other issues affecting his health and safety while imprisoned. De La Cerda primarily challenges the fact of constraints imposed upon his liberty. In other words, De La Cerda's arguments would, if sustained, liberate him from restrictive conditions of supervised release that De La Cerda finds onerous. Because De La Cerda challenges the fact of the restrictions imposed on his liberty, the Court concludes that habeas corpus review is available.[4]

**B.    Mootness**

The conclusion that habeas corpus review is available does not end the inquiry about whether De La Cerda's challenge is well taken. By arguing that habeas corpus is not an available remedy, the respondent notes that De La Cerda's parole was recently revoked in 2004 because he was convicted of a new felony offense. As a result, De La Cerda has returned to TDCJ custody with a new fifteen-year prison sentence. A federal writ of habeas corpus is only available to remedy an unlawful restraint upon a person's liberty. *See Preiser*, 411 U.S. at 484. Because De La Cerda is no longer on parole, the remedy that he seeks on

---

[4]    Even if De La Cerda's petition were deemed to challenge the conditions of his confinement, thereby amounting to a § 1983 claim, the outcome of this case would be the same for reasons discussed below.

11

federal habeas corpus review – release from the complained of constraints – is no longer available.  It therefore appears that De La Cerda's petition is moot.

The United States Supreme Court has explained that a case becomes moot if it "no longer present[s] a case or controversy under Article III, § 2 of the Constitution." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998).  Under the case-or-controversy requirement, "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit.'" *Id.* (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).  "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" *Spencer*, 523 U.S. at 7 (quoting *Lewis*, 494 U.S. at 477).

A challenge to the validity of a conviction satisfies the Article III case-or-controversy requirement because the incarceration, or the restrictions imposed by the terms of parole, constitute a concrete injury caused by the conviction and redressable by invalidation of the conviction.  *See Spencer*, 523 U.S. at 7; *see also Carafas v. LaVallee*, 391 U.S. 234, 237 (1968); *Sibron v. New York*, 392 U.S. 40, 55 (1968).  By contrast, where a petitioner challenges only the administration of his sentence, and not his conviction, there is no presumption that collateral consequences exist for the purpose of creating an actionable case or controversy once he has been released.  *See Lane v. Williams*, 455 U.S. 624 (1982).  In other words, when a petitioner does not attack his conviction, continuing collateral consequences required to demonstrate a concrete injury are not presumed and, therefore, must be proven.  *See Spencer*, 523 U.S. at 14; *Beachem v. Schriro*, 141 F.3d 1292, 1294 (8th

12

Cir.), *cert. denied*, 525 U.S. 938 (1998).

De La Cerda's petition does not challenge the validity of any of his underlying convictions. Rather, he complains only that prison officials erred in the administration of his sentence by imposing objectionable conditions of release on parole, specifically, the imposition of electronic monitoring and the requirement that he reside temporarily at a community confinement center upon his release from prison. Because De La Cerda's parole has been revoked and he is no longer subject to the objectionable conditions of release, he cannot show that an actionable controversy continues in this case. In other words, there is no longer anything for this Court to remedy in a federal habeas corpus proceeding where the only relief available is release from conditions of confinement.[5] Absent a case or controversy, this Court no longer has jurisdiction to consider De La Cerda's claims. Therefore, his petition is subject to dismissal as moot.

### C.    Ex Post Facto

Alternatively, the respondent argues that De La Cerda is not entitled to federal habeas corpus relief because he fails to establish a constitutional violation in connection with the conditions imposed on his supervised release. De La Cerda contends that, when he was released on parole in July of 2003, he was placed in the Super-Intensive Supervision Program (the "SISP") and forced to comply with conditions that did not exist when he committed his underlying offense in 1984, in violation of the Ex Post Facto Clause. The state habeas

---

[5]    Similarly, the claim is moot even if this case were deemed one governed by § 1983, because the conditions under attack no longer apply to De La Cerda.

corpus court rejected this claim.  The state court found that there was authority in place at the time that De La Cerda committed his underlying offense, which allowed the parole board to "impose conditions upon persons released to mandatory supervision."  *Ex parte De La Cerda*, No. 15,367-06 at 86 (citing TEX. CODE CRIM. PROC. art. 42.12, § 15(g) (Vernon 1983) (since repealed)).  The state court concluded therefore that the conditions imposed on De La Cerda's release were "not in violation of the ex post facto clause."  (*Id*.)

A review of the statute invoked by the state habeas corpus court confirms that Texas officials have had authority to impose conditions upon those prisoners released to mandatory supervision or parole since well before De La Cerda's offense was committed in 1984.  *See* TEX. CODE CRIM. PROC. art. 42.12, § 15(g) (Vernon 1979).  That statute was repealed and replaced with similar language.  See TEX. CODE CRIM. PROC. ANN. art. 42.18, § 8(g)(1) (Vernon Supp. 1989) (formerly article 42.12, § 15(g) (repealed)).  Article 42.18 was reportedly repealed by Acts 1997, 75th Leg., ch. 165, § 12.22, eff. Sept. 1, 1997, and portions of that statute are now codified in Chapter 508 of the Texas Government Code. Finding that the law authorizing conditions of release upon mandatory supervision has not changed, at least one other district court has held that challenges similar to the one raised by De La Cerda fail to establish a violation of the Ex Post Facto Clause.  *See Brown v. Cockrell*, No. 3-02-CV-2433-N, 2003 WL 21458761 (N.D. Tex. April 29, 2003); *Randall v. Cockrell*, No. 3-02-CV648-G, 2002 WL 31156704 (N.D. Tex. Sept. 25, 2002).  De La Cerda does not rebut this finding or show that the conclusion reached by the state habeas court on this issue was incorrect.

More importantly, De La Cerda cannot establish that the objectionable conditions imposed as part of the SISP violate the constitution because any change in the law was not done for punitive purposes. The SISP regime was adopted by the Texas Legislature in 1997 to provide "the highest level of supervision" afforded for certain inmates released from state prison. TEX. GOV'T CODE § 508.317 (Vernon 2004). Prior to 1997, the Texas adult parole and mandatory supervision statutes were codified in Article 42.18 of the Texas Code of Criminal Procedure. Section 24 of that statute provided for an "intensive supervision" program upon a prisoner's release from custody:

> Sec. 24. The department shall establish a program to provide intensive supervision to inmates released under the provisions of Subchapter B, Chapter 499, Government Code, and other inmates determined by parole panels or the department to require intensive supervision. The Texas Board of Criminal Justice shall adopt rules that establish standards for determining which inmates require intensive supervision. The program must provide the highest level of supervision provided by the department.

TEX. CODE CRIM. PROC. art. 42.18, § 24 (Vernon Supp. 1996). A separate portion of the statute provided for electronic monitoring. *See id*. § 22.

In 1997, the Texas intensive supervision statute was revised and codified in § 508.317 of the Texas Government Code, adding a "super intensive supervision" component as follows:

> (a)   The department shall establish a program to provide intensive supervision to inmates released under Subchapter B, Chapter 499, and other inmates determined by a parole panel or the department to require intensive supervision.

> (b)   The Texas Board of Criminal Justice shall adopt rules that establish standards for determining which inmates require intensive supervision.

15

(c)     The program must provide the level of supervision the department provides that is higher than any level of supervision other than the level of supervision described by Subsection (d).

(d)     The department shall establish a program to provide super-intensive supervision to inmates released on parole or mandatory supervision and determined by parole panels to require super-intensive supervision.  The program must provide the highest level of supervision provided by the department.

TEX. GOV'T CODE § 508.317 (Vernon 2004).  According to legislative history for the 1997 statute, the Texas Legislature recognized that higher levels of supervision were needed for certain inmates who were eligible for early release on parole:

. . . The legislature finds that the release of dangerous inmates from the Texas Department of Criminal Justice sentenced under prior Texas law creates the potential for a continuing threat to public safety.

The legislature finds that current Texas law eliminates the chance that dangerous inmates will be automatically released from Texas prisons. However, many inmates sentenced under prior Texas law are eligible for various forms of early release.  Because the United States Constitution precludes increasing the sentences of dangerous inmates after their convictions, and because prior Texas law allows the release of these inmates before the completion of their sentences, there is a need to better supervise these inmates on release.

The legislature finds that there is a compelling state interest in placing inmates released on parole and mandatory supervision that will best protect public safety.  The level of supervision of inmates released from the Texas Department of Criminal Justice should be appropriate based on their likelihood of committing new offenses, the nature of their original offenses, their performance in prison programs designed to rehabilitate inmates, and any other factor deemed by the parole panel to be relevant to their status.

The legislature finds that there is a need for a program of intensive supervision of certain inmates whose histories indicate a propensity for violence.  Regardless of whether an inmate's instant offense is a violent offense, there is a need for careful evaluation and review of each inmate

16

released from prison to determine the need for supervision of the inmate . . . .

Tex. H.B. 2918, § 6(b), 75th Leg. (1997).  The legislative history plainly shows that the statute's purpose was to protect public safety and that the Texas Legislature further intended for the SISP conditions of release to apply retroactively to eligible inmates who had been sentenced "under prior Texas law."  *Id.*

TDCJ adopted policies and procedures pursuant to the 1997 super intensive supervision statute that were designed to determine which offenders were eligible for placement in this program of heightened supervision.  Current policy provides that the following inmates must be referred to an "SISP Panel" for possible placement in the program:

A.  Prior to release on parole or mandatory supervision, offenders who meet one or more of the following criteria shall be referred to the SISP Board Panel (hereinafter referred to as the "SISP Panel") for possible SISP placement:

1.  A past or current conviction for one of the following offenses:

a.  Murder or Capital Murder;

b.  Criminal Solicitation of a Capital Offense;

c.  Kidnapping or Aggravated Kidnapping;

d.  Indecency with a Child;

e.  Sexual Assault or Aggravated Sexual Assault;

f.  Aggravated Assault;

g.  Sexual Performance by a Child;

h.  Possession or Promotion of Child Pornography;

i.     Stalking (felony or misdemeanor conviction);

j.     Injury to a Child, Elderly Individual, or Disabled Individual;

k.     Deadly Conduct;

l.     Robbery or Aggravated Robbery;

m.    Burglary (if 1st degree and resulting in bodily injury);

n.     Arson;

o.     Retaliation.

Texas Department of Criminal Justice, Parole Division Policy and Operating Procedure No. 3.15.1 (June 1, 2001).

De La Cerda does not dispute that he is a habitual offender or that his conviction for aggravated kidnapping makes him eligible for SISP conditions of release.  Likewise, De La Cerda does not refute the fact that the change in law applying the Texas super intensive supervision parole scheme to certain eligible offenders was expressly made retroactive by the Texas Legislature "regardless of when the offense for which the inmate was serving a sentence before release was committed."  Tex. H.B. 2918, § 10, 75th Leg. (1997).

To the extent that De La Cerda contends that the revised super intensive supervision parole statute constitutes an ex post facto law, his arguments are without merit.  Article I, Section 10 of the United States Constitution provides that "[n]o state shall  . . . pass any . . . ex post facto [l]aw."  The Supreme Court has construed this to mean that states are prohibited from enacting any law "which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then

18

prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981).  Thus, the following two elements must be present for an ex post facto violation to occur: "(1) a law must be retrospective, that is, it must apply to events occurring before its enactment, and (2) the new law must create a sufficient risk of increasing the punishment attached to the defendant's crimes." *McCall v. Dretke*, 390 F.3d 358, 363 (5th Cir. 2004) (citations and quotation omitted).  Because the parole statute at issue is plainly retroactive, the existence of an ex post facto violation depends on whether the statute constitutes additional criminal punishment for the crimes previously committed.  *See Kansas v. Hendricks*, 521 U.S. 346, 371 (1997).

To determine whether a law imposes punishment for ex post facto purposes, courts apply the so-called "intents-effects" test.  *Moore v. Avoyelles Correctional Ctr.*, 253 F.3d 870, 872 (5th Cir.), *cert. denied sub nom. Moore v. Kaylo*, 534 U.S. 1008 (2001).  This test requires two inquiries: (1) whether the legislature intended the sanction to be punitive; and (2) whether the sanction is so punitive in effect that the statute cannot be legitimately viewed as regulatory or civil in nature.  *Id.* (citing *United States v. Ursery*, 518 U.S. 267, 288 (1996)).  If the legislature's stated intent was not punitive, "only the clearest proof" of a statute's punitive effect will suffice to transform an enactment into a criminal penalty.  *Smith v. Doe*, 538 U.S. 84, 92 (2003) (quoting *Hudson v. United States*, 522 U.S. 93, 100 (1997) (citations omitted)).

De La Cerda fails to show that the SISP parole regime is punitive for purposes of demonstrating an ex post facto violation under either prong of the above-referenced "intents-effects" test.  The legislative history, as set forth above, emphasizes that the statute was

drafted to further the compelling state interest of protecting public safety, and not to punish.
Thus, the legislative intent is plainly not punitive.  Moreover, De La Cerda has presented no
proof other than his own conclusory allegations that the conditions at issue (electronic
monitoring, temporary residence in a community confinement center) are punitive or that the
retroactive effect of the statute otherwise imposes punishment rising to the level of an ex post
facto violation.  The Fifth Circuit has already recognized as much, holding that changes in
the Texas parole laws imposing SISP restrictions on parole do not constitute an ex post facto
violation. *See Cruz v. Texas Parole Div.*, No. 03-50745, 2004 WL 190251 (5th Cir. Jan. 30,
2004) (unpublished) (citing *Vineyard v. Keese*, 70 F.3d 1266 (5th Cir. 1995) (unpublished)
(holding that changes in Texas parole laws imposing electronic monitoring, urinalysis,
driving restrictions, and curfew did not constitute an ex post facto violation)).

De La Cerda does not demonstrate a constitutional violation in connection with the
impositions of special conditions of release pursuant to the Texas super intensive supervision
program or SISP.  It follows that De La Cerda fails to show that the state court's findings
were incorrect, or that the conclusion reached was contrary to, or involved an unreasonable
application of, clearly established Supreme Court precedent.  For this reason, De La Cerda
is not entitled to federal habeas corpus relief as a matter of law, and the respondent's motion
for summary judgment is granted.

## IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Because the habeas corpus petition filed in this case is governed by the AEDPA,
codified as amended at 28 U.S.C. § 2253, a certificate of appealability is required before an

appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 124 S. Ct. 2562, 2569 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

The Court concludes that jurists of reason would not debate whether any procedural ruling in this case was correct or whether the petitioner has stated a valid claim for the denial of a constitutional right.  Accordingly, a certificate of appealability will not issue in this case.

## V.     CONCLUSION

For these reasons, the Court **ORDERS** as follows:

1.      The respondent's motion for summary judgment (Docket Entry No. 7) is **GRANTED**.

2.      The petitioner's motion for an evidentiary hearing (Docket Entry No. 11) is **DENIED**.

3.      The federal habeas corpus petition is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

4.      A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on **October 17, 2005.**

Nancy F. Atlas
United States District Judge